ROSEMARY LEDET, Judge.
|! This is a criminal appeal by the State. The State’s sole assignment of error is that the district court erred when it granted the motion to quash the bill of information filed by the defendant, Alan G. Brooks. Before addressing the merits of the appeal, we first address Mr. Brooks’ motion to dismiss the appeal as abandoned. For the reasons that follow, we deny Mr. Brooks’ motion to dismiss, reverse the district court’s judgment granting Mr. Brooks’ motion to quash, and remand with instructions.

STATEMENT OF THE CASE

On August 28, 2009, the State charged Mr. Brooks with one count each of theft of currency in excess of five hundred dollars, a violation of La. R.S. 14:67, and misapplication of funds by a contractor, a violation of La. R.S. 14:202.[1] Both offenses allegedly occurred on August 17, 2007; the victim, Henry Bruser, IV, is the same in both counts. On September 28, 2009, Mr. Brooks was arraigned and entered pleas of not guilty. On February 5, 2010, a preliminary hearing was | conducted; the district court found no probable cause to sustain the charges. On March 19, 2010, Mr. Brooks filed a motion to quash. After hearing testimony, the district court grant *1131 ed the motion and quashed both charges. The State objected and filed a -written motion for an appeal. The district court signed the order granting the State’s motion and set a return date of April 18, 2010. The record does not reflect that a notice of appeal was prepared by the minute clerk, nor was a notice of appeal provided to this court.
Between the expiration of the return date and March 13, 2013, the matter appeared on the district court’s docket over twenty times for an appeal status. On March 13, 2013, the district court set a new return date of April 15, 2013. On the same date, the minute clerk prepared a notice of appeal. On March 21, 2013, the Clerk of the District Court forwarded the notice of appeal to the parties and to this court. On April 24, 2013, the record was lodged in this court.
On May 20, 2013, the State filed its appellant’s brief. On June 6, 2013, Mr. Brooks, the appellee, filed a Motion to Dismiss the Appeal as abandoned based on the three-year delay between the granting of the State’s motion for an appeal and the lodging of the record with this court. In the alternative, he moved to supplement the record with the written motion to quash and to suspend the appellee’s brief due date. By letter dated June 25, 2013, the Criminal District Court’s clerk advised this court that the written motion to quash could not be located. This court then set a new brief due date for the appellee. On July 9, 2013, Mr. Brooks’ appellee brief was timely filed. In his brief, Mr. Brooks reurged all of [¡¡the arguments made in his Motion to Dismiss the Appeal. On June 14, 2013, this court deferred Mr. Brooks’ Motion to Dismiss the Appeal to the panel assigned to decide the merits of his appeal. Before reaching the merits of the appeal, we address his motion to dismiss.

MOTION TO DISMISS THE APPEAL AS ABANDONED

In both his motion to dismiss and his appellee brief, Mr. Brooks argues that the State’s appeal should be dismissed as abandoned. In the alternative, he argues that his rights to due process and to a speedy trial will be denied if this court reverses the district court’s decision to quash the bill of information and remands the case for further proceedings.
A civil appeal may be dismissed as abandoned when the parties fail to take steps in its prosecution or disposition for the time periods provided in the rules of the appellate court. See La. C.C.P. art. 561(C); La. C.C.P. art. 2162. Rule 20 of the Fourth Circuit Court of Appeal Local Rules provides that, “when no activity occurs in a [civil] appeal for three years, the appeal shall be dismissed as abandoned,” except in certain circumstances. There are no comparable provisions in the Code of Criminal Procedure or the rules of this court that authorize the dismissal of a criminal appeal.[2]
Despite the lack of statutory authority, the Louisiana Supreme Court in State v. Smith, 284 So.2d 576 (La.1973), dismissed the State’s appeal from the granting of the motion to quash when the record was not lodged by the return date. In Smith, supra, extensions of the original return date were granted but after only the return dates had passed. In determining that the appeal should be dismissed, the Supreme Court stated:
Under Articles 916 and 919 of the Louisiana Code of Criminal Procedure, *1132 the district court is authorized to extend the return date. Once the return date has expired, however, no further extension is possible. Upon the expiration of the return date, the judgment becomes final. See LSA-C.Cr.P. Art. 919, Comment (b); State v. Price, La., 274 So.2d 194 (1973); State v. Ash, 257 La. 387, 242 So.2d 535 (1971); Wischer v. Madison Realty Co., 242 La. 334, 136 So.2d 62 (1961).
In Wischer v. Madison Realty Co., supra, the rule is succinctly stated as follows:
‘Any action of the district court upon an application for an extension filed after the last extended return date is without legal effect.’
Smith, 284 So.2d at .577.
Based on statutory changes since the Smith decision was rendered, the appellate court in State v. Jackson, 07-84 (La.App. 5 Cir. 6/26/07), 963 So.2d 432, declined to follow the Smith case. In so doing, the appellate court distinguished Smith stating:
Smith was decided under a previous version of LSA-C.Cr.P. art. 919 which was amended in 1980, 1984, 1987, 1988, and 1999. LSA-C.Cr.P. art. 916 has also been amended since Smith. Furthermore, LSA-C.Cr.P. art. 915.1 B was added to the Code of Criminal Procedure by Acts 1988, No. 525, § 1 and was not in existence at the time of Smith. We therefore conclude that Smith is not applicable to the instant case. [Footnote omitted.]
Jackson, 07-84 at pp. 19-20, 963 So.2d at 443-44. The appellate court also noted that the Supreme Court chose not to follow Smith in State v. Kraft, 294 So.2d 219 (La.1974). Jackson, 07-84 at p. 20, 963 So.2d at 444, n. 4.
The rules regarding obtaining extensions of the return date are set forth in La.C.Cr.P. art 915.1, which provides:
A. The district court may grant one extension of the return date of not more than thirty days. An extension may not be granted after the return date has passed. The extension may be granted only upon proof presented by the moving party that additional time is necessary due to extenuating circumstances beyond the control of the moving party and that, without the extension, an unusual and undue hardship would be created. A copy of the extension shall be filed with the appellate court and the clerk of the district court.
B. Subsequent extensions may be granted by the appellate court for sufficient cause or at the request of the court reporter as provided in Article 919. When a subsequent extension is granted by the appellate court, notice thereof shall be given by mail by the clerk of the district court to all parties. Failure of the clerk of the district court to mail such notice shall not affect the validity of the appeal nor will any error or defect which is not imputable to the appellant affect the validity of the appeal.
La.C.Cr.P. art 915.1 (emphasis supplied). Thus, the failure to timely lodge an appeal or to obtain an extension of the return date should not cause an appellant to lose his right to appeal unless the failure was caused by the appellant.
In State v. Ambeau, 05-0711 (La.App. 4 Cir. 2/15/06), 930 So.2d 54, this court refused to dismiss Mr. Ambeau’s appeal as untimely despite a multi-year delay in having it lodged. The record in that case showed that in April 1992, Mr. Ambeau was convicted in a bench trial of one count of both armed robbery and attempted armed robbery. The following month he was sentenced to serve fifty years and twenty-five, respectively. In September 1992, the district court | (¡adjudicated him a *1133 third-time felony offender as to the armed robbery conviction and resentenced him to serve sixty-six and two-thirds years at hard labor. The minute entries for May and September 1992 were largely illegible. Neither the record nor any of the legible minute entries indicated that Mr. Ambeau moved for an appeal. Although he contended that he moved for an out-of-time appeal, the appointment of new counsel, and for the production of trial documents in July 1994, the record did not support this claim. In September 1994, Mr. Am-beau filed a writ of mandamus with this court seeking action on his motions; a second writ pertaining to the motions was filed in 1995.
In August 1995, the district court granted Mr. Ambeau’s motion for an out-of-time appeal; however, this court never received a notice of the appeal. In 2001, Mr. Am-beau again filed a writ seeking help in having his appeal lodged in this court; another writ application followed in 2004. That writ was granted, and the district court was ordered to enforce its judgment unless it specifically found that Mr. Am-beau waived his right to an appeal. Finally, a notice of appeal was filed in the district court in January 2005, and the district court appointed counsel. A few months later, the district court wrote a letter to this court wherein it stated that the transcript from the May 1992 multiple offender hearing could not be located.
After the appeal record was lodged, Mr. Ambeau assigned as error the denial of his constitutional right to an appeal because of the missing transcript. This court subsequently found that the assignment had merit. In the same opinion, in light of the procedural history of the case, this court denied the State’s motion to dismiss |7the appeal as untimely, stating that “we find that substantial justice requires our disposition of this appeal as timely.” Ambeau, 05-0711 at p. 11, 930 So.2d at 60.
Mr. Brooks cites no cases holding that an appeal that was timely moved for by the State should be deemed abandoned merely because the district court personnel failed to lodge the record by the return date or even within three years. He instead cites two cases holding that a defendant who had filed a pleading in the district court but failed to seek a hearing or a ruling on the pleading was deemed to have abandoned it. State v. Fugler, 09-1822 (La.9/17/10), 45 So.3d 1060; State v. Austin, 11-0122 (La.App. 1 Cir. 6/10/11), 99 So.3d 1008.[3] These two cases are distinguishable from this case. In this case, the State timely moved for an appeal, and the district court did not delay in granting the motion. At that point, the burden fell upon the district court personnel, not the State, to have the record lodged. There is nothing in the record to indicate that the State in any way caused the delay. Mr. Brooks asserts only that the prosecutor should have inquired about the appeal during one of the many appeal status hearings held. None of the minute entries, however, reflects that a State representative was present at the status hearings. Furthermore, the district court was in the same, or *1134 better, position to determine the status of the appeal and why it was not yet lodged.
| ¡¿Because there is nothing in the record to indicate that any delay in lodging the appeal was the fault of the appellant — the State — and because there are no statutes or rules of court authorizing dismissal of a criminal appeal as abandoned, we deny Mr. Brooks’ motion to dismiss this appeal as abandoned due to the lapse of time from the granting of the motion for appeal to the lodging of the record in this court.
As noted, Mr. Brooks also argues that if this court vacates the district court’s ruling and remands the matter for further proceedings, his rights to due process and a speedy trial will be denied. There is nothing in the record or Mr. Brooks’ appellee brief that shows in what way he will be prejudiced by going to trial now, and it is his burden of demonstrating that his rights have been violated. We find the appropriate remedy is not dismissal of the State’s appeal; rather, we find it appropriate to instruct the district court on remand to reserve Mr. Brooks’ right to file a motion to quash on the basis that his right to a speedy trial has been denied. If Mr. Brooks elects to file a motion on that basis, the district court can conduct a hearing at which Mr. Brooks can make the requisite showing.
STATEMENT OF THE FACTS[4]
The victim, Mr. Bruser, testified that on December 27, 2007, he entered into a written contract with the defendant, Mr. Brooks. The contract was for Mr. Brooks to build a soundproof music recording studio next to Mr. Bruser’s residence |8to replace the one destroyed in Hurricane Katrina. When Mr. Bruser identified a copy of the contract, he admitted that it reflected the person he contracted with was not Mr. Brooks personally, but Apple-brook Construction LLC.[5] Mr. Bruser explained that the construction company belonged to Mr. Brooks. Mr. Bruser also admitted that the contract he identified in court contained neither any details nor a description of the work to be done. Instead, he stated that they “had other signed sheets of paper that gave the details about what was to be done.” The contract terms required Mr. Bruser to pay a total of $103,000; he paid approximately $86,000 of that amount. Under the terms of the contract, the sums paid under the contract included all labor and materials.
When shown checks purportedly made out to the defendant, Mr. Brooks, defense counsel noted for the record that the checks were made out to Applebrook Construction LLC, not to Mr. Brooks personally. The State responded that it had established that Mr. Brooks was working through Applebrook Construction LLC.
Mr. Bruser acknowledged that some of the work was completed — the installation of a foundation and the modular building’s exterior. He testified that after this work was done, he began to have problems with Mr. Brooks asking for money to buy materials; however, the materials were not delivered to the job site. After a lumber company advised Mr. Bruser that it had received a bad check for the materials that it had provided to the jobsite, Mr. Bruser terminated the contract.
*1135 | ipAfter a bench conference, the district court questioned Mr. Bruser about why he had terminated the contract when not all of the money had been paid. The court opined that it did not know what the victim was “doing in the criminal court.” The court then found no probable cause and terminated the proceedings.
At the March 19, 2010 hearing on the motion to quash, after the court heard argument from counsel, Mr. Bruser again testified. Mr. Bruser stated that he had entered into a contract with Applebrook Construction and that he had terminated the contract. He further stated that he terminated the contract when it became apparent to him that Mr. Brooks had not purchased materials with the funds he had been given and was not being truthful about what he had done with the funds. The district court again viewed a contract, noting the full amount due was $108,985, with certain amounts to be paid as work was performed. The district court, however, noted that the contract it was viewing was undated and that there were no dates entered for when the work was to commence or when it was to be completed. Mr. Bruser stated that the contract was signed on December 27, 2007 and that, on that date, he gave a subcontractor approximately $21,000.
The district court then noted that it had been given another contract with a date of August 17, 2007 — the date of the offenses in the bill of information. Mr. Bruser stated that this was a separate — or a subcontract — for the foundation work. This contract, however, additionally reflected a total amount due of $108,985. Mr. Bruser stated that he and Mr. Brooks signed this document (or contract) on December 27, 2007. When asked what work was performed, Mr. Bruser stated | nthat the foundation was dug and poured in August 2007. He paid Brooks $5,000 for that work, which was included in the total contract price.
Mr. Bruser further testified' that the project was completed by Mr. Applecrest, whom he identified as Mr. Brooks’s father-in-law. Mr. Applecrest also had an interest in Applebrook Construction LLC. Mr. Bruser testified that he paid Mr. Apple-crest personally to complete the work.
Once again the district court terminated the victim’s testimony, stating that the matter did not belong in criminal court. The district court then granted the motion to quash “on all bases.” This appeal followed.

DISCUSSION

• In its brief, the State advances two arguments in support of its contention that the district court erred when it granted Mr. Brooks’ motion to quash. In its first argument, the State contends that the motion to quash was oral, not written, and that an oral motion to quash is not permitted. Mr. Brooks counters that the record factually does not support the State’s contention that no written motion to quash was filed. We agree. Despite that the record filed in this court does not contain a copy of the motion and that the district clerk’s office — in response to an order from this court to provide the motion, advised that it could not be located — the record belies the State’s contention that no written motion was filed.
According to the minute entry dated March 19, 2010, counsel for Mr. Brooks appeared and filed a motion to quash. A review of the transcript of the March 19, 2010 hearing fully supports the minute entry. The proceedings 1 ^commenced with the assistant district attorney C‘ADA”) stating, “Your Honor, we were just served with the Motion to Quash this morning. We would like an- opportunity to respond.... It is just filed.” The court *1136 responded that it wished to see what the basis for the motion to quash was, and it would then advise the ADA of what it was going to do. The transcript then reflects that “the court reads the motion to quash that was filed in the case.” The court then refused to continue the hearing and directed the defense attorney to argue her motion.
The record thus reflects that the defense attorney filed a written motion to quash, served the State with a copy, and the trial judge reviewed the written motion before hearing argument. The State’s first argument thus lacks merit.
In its second argument, the State avers that the district court erred because it quashed the bill of information on improper grounds. The State contends that the district court’s reason for quashing the bill of information was its belief that the matter belonged in civil court as a contract dispute, not in criminal court. The State argues that the district attorney has the sole discretion in deciding “whom, when, and how he shall prosecute” an offense. See La.C.Cr.P. art. 61. Thus, the State contends that the district court had no authority to divest the State of its decision to pursue criminal charges against Mr. Brooks.
Although the written motion to quash is unavailable for review, the defense attorney stated for the record the four grounds asserted in the motion to quash, which were as follows:
1. The contract “was terminated by the alleged victim prior to the fulfillment of the alleged victim’s terms under the contract;” the matter |iswas “a civil disagreement. The contract, and all of the obligations ... were terminated with the termination of the contract. And it should not result in any criminal charges;”
2. The contract was not with Mr. Brooks but with Applebrook Construction, a limited liábility company in which Mr. Brooks had a one-third interest. Counsel averred that Bill Applecrest, “who completed the terms of the contract, completed construction, is also a one-third member of the LLC. So, we have a contract with Applebrook for a construction project that was completed by member, ... with liabilities, obligations, and responsibilities as Mr. Brooks. The contract was both completed, fulfilled by Applebrook, and at the same time terminated prior;”
3. Double jeopardy; and
4. The State’s failure to file a response to the request for a Bill of Particulars by the deadline.
As to the last two grounds, the district court stated that it would “handle those issues separately.” There was no argument regarding these last two grounds. However, when the district court granted the motion to quash, it stated for the record that the matter belonged in civil court, not criminal court, and that it was granting the motion “on all bases.”
The general grounds upon which a motion to quash may be based are set out in La.C.Cr.P. art. 532, which provides:
A motion to quash may be based on one or more of the following grounds:
(1) The indictment fails to charge an offense which is punishable under a valid statute.
(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. [Footnote omitted.] In such case the court may permit the district attorney to amend the indictment to correct the defect.
(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the *1137 indictment into separate counts or separate indictments.
114(4) The district attorney failed to furnish a sufficient bill of particulars when ordered to do so by the court. In such case the court may overrule the motion if a sufficient bill of particulars is furnished within the delay fixed by the court.
■ (5) A bill of particulars has shown a ground for quashing the indictment under Article 485.
(6) Trial for the offense charged would constitute double jeopardy.
(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.
(8) The court has no jurisdiction of the offense charged.
(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted.
(10) The individual charged with a violation of the Uniform Controlled Dangerous Substances Law has a valid prescription for that substance.
La.C.Cr.P. art. 485 provides:
If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be.
In State v. Byrd, 96-2302 (La.3/13/98), 708 So.2d 401, 411, the Louisiana Supreme Court addressed the purpose and the limits of a motion to quash as follows:
A motion to quash is, essentially, a mechanism whereby pre-trial pleas are urged, i.e., pleas which do not go to the merits of the 11scharge. At a hearing on such a motion, evidence is limited to procedural matters and the question of factual guilt or innocence is not before the court. La.C.Cr.P. art. 531 et. seq.; State v. Rembert, 312 So.2d 282 (La.1975); State v. Patterson, 301 So.2d 604 (La.1974).
In considering a motion to quash, a court must accept as true the facts contained in the bills of information and in the bill of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits. State v. Gerstenberger, 260 La. 145, 255 So.2d 720 (1971); State v. Masino, 214 La. 744, 750, 38 So.2d 622 (1949) (“the fact that defendants may have a good defense is not sufficient grounds to quash the indictment”).

Id.

Similarly, in State v. Lagarde, 95-1497, p. 2 (La.App. 4 Cir. 4/3/96), 672 So.2d 1102, 1103, this court noted:
A motion to quash an indictment is treated much like an exception of no cause of action in a civil suit; the court must accept as true the facts contained in the bill of information and the bills of particulars and decide whether or not a crime has been charged. LSA-C.Cr.P. art. 532; State v. Robertson, 615 So.2d 1036, 1039 (La.App. 1 Cir.1993), writ denied 619 So.2d 1062.
*1138 Id.; see also State v. Bremer, 97-0456 (La.App. 4 Cir. 12/10/97), 704 So.2d 917.
The Louisiana Supreme Court, however, has also recognized a very narrow exception to the general rule “for cases in which the state cannot establish an essential element of the offense under any set of facts conceivably provable at trial.” State v. Advanced Recycling, Inc., 02-1889, p. 9 (La.4/14/04), 870 So.2d 984, 989 (citing State v. Legendre, 362 So.2d 570, 571 (La.1978)).[6]
In zState v. Billard, 03-319 (La.App. 5 Cir. 7/29/03), 852 So.2d 1069, the Fifth Circuit relied upon Byrd to find that the defendant’s motion to quash lacked merit. Mr. Billard asserted that the victim’s testimony established that he did not threaten, harm, or demand money from him; therefore, he argued the State failed to present any evidence that the victim was robbed. The Fifth Circuit ruled that the defendant’s motion to quash improperly raised factual questions of guilt or innocence.
In a factual situation similar to the instant case, this court in State v. Schmolke, 12-0406 (La.App. 4 Cir. 1/16/13), 108 So.3d 296, addressed the impropriety of granting a motion to quash a charge of violating La. R.S. 14:202 — misapplication of payments by a contractor — on the basis that the charge was not supported by the demonstrated facts.
In Schmollce, the district court conducted a preliminary hearing at the same proceeding during which it considered the motion to quash. From the bill of particulars, this court determined that the factual allegations for the offense were that the defendant entered into a contract with Mr. and Mrs. Phelps to reconstruct their home for a price of $210,540; the contract required the defendant to pay all subcontractors. When the defendant failed to do so, two liens, totaling approximately $14,000, were placed on the Phelps’ property. Based on a schedule of payments in the contract, the Phelps paid the defendant approximately $189,000.
The detective who investigated the Phelps’ complaint testified at the preliminary hearing that the project was not completed and that the Phelps did not pay the defendant $21,000 of the contract price. The detective also testified that the defendant provided him with a release of one of the liens and documents | ^establishing that there were some items on the job that exceeded the contract allowances. Also during the preliminary hearing, the parties stipulated that after the bill of information was filed, the defendant satisfied the final remaining lien.
At the hearing on the motion to quash, Mr. Schmolke asserted that the State could not prove its case for the following four reasons: (1) that the State had no evidence that he misapplied funds; (2) that the Phelps failed to pay all amounts due under the contract; (3) that additional work was done outside the scope of the contract; and (4) that cost overruns contributed to the shortfall. Opposing the motion, the State asserted that it was based primarily on the substantive facts of the case and thus should be denied. The *1139 State further asserted that although Mr. Schmolke had asserted that the case was primarily a contract dispute, he failed to adequately complete the re-construction of the home as contracted for and then left the jurisdiction. As a result, the State pointed out that the final fee was not paid to Mr. Schmolke. Mr. Schmolke replied that the State could not prove its case because La. R.S. 14:202 requires that all money owed under the contract must have been paid, and the bill of particulars established such was not the case.
Granting Mr. Schmolke’s motion to quash, the trial judge stated:
The defendant is charged with one count of misapplication of payment under La. R.S. 14:202. The charge arises out of a contract between the defendant and Alvin and Catherine Phelps to reconstruct their home.... Two subcontractor liens form the basis for the current case. At the hearing, it was established that the Masonry Products lien was not for work performed under the contract, but an extra, and that the lien has since been satisfied. As further argued by the defense, the Bill of Particulars states that the defendant is still owed $21,443.80 under the contract. The defense also argues that the Defendant has paid and satisfied the Crest Mechanical lien and thus an additional amount is owed the defendant. It appears that the charge in the bill of information is not supported by the facts demonstrated. The dispute here is purely civil. The motion to quash is therefore GRANTED under La.C.Cr.P. art. 532(5).
| ^Reversing the district court’s ruling granting the motion to quash, this court reasoned:
[T]he trial judge clearly did not accept as true the facts exclusively as they are set forth in the bill of information and the bill of particulars. Notably, the trial judge apparently inferred from the bill of particulars that Mr. Schmolke was owed $21,443.80 by the homeowners under the contract; no such statement of fact is set forth in the bill of particulars. Without a doubt, the trial judge’s reasons reflect a view that Mr. Schmolke has a defense on the merits. But, of course, the guilt or innocence of Mr. Schmolke was not before the trial judge on the motion to quash.
Schmolke, 12-0406 at p. 8, 108 So.3d at 301.[7]
In this case, Mr. Brooks is charged with two offenses: theft in an amount over $500 and misapplication of payments by a contractor. The essential elements of the crime of theft as defined in La. R.S. 14:67(A) are as follows: (1) the misappropriation or taking of a thing of value, (2) which belongs to another, (3) without consent or by means of fraudulent conduct practices, or representation, and (4) with the intent to permanently deprive the other of the object of the misappropriation of taking.
*1140 Misapplication of payments by a contractor is prohibited under La. R.S. 14:202, which provides, in pertinent part:
liflA. No person, contractor, subcontractor, or agent of a contractor or subcontractor, who has received money on account of a contract for the construction, erection, or repair of a building, structure, or other improvement, including contracts and mortgages for interim financing, shall knowingly fail to apply the money received as necessary to settle claims for material and labor due for the construction or under the contract.
The essential elements of the crime of misapplication of payments by a contractor are as follows: (1) the existence of a contract to construct, erect, or repair a building, structure, or other improvement; (2) the receipt of money on the contract; and (3) a knowing failure to apply the money received as necessary to settle claims for material and labor due under the contract. State v. Spears, 05-0964, p. 4 (La.4/4/06), 929 So.2d 1219, 1223.
As in Sehmolke, supra, the district court in this case reached the conclusion that Mr. Brooks has viable defenses to the merits of both charges. The district court did so based on the grounds that Mr. Brooks did not personally enter into a contract with the victim, that the victim failed to pay the full amount of- the contract price, and that the victim deprived Mr. Brooks and Applebrook Construction LLC of the opportunity to complete the job. The district court so found even though the contract provided no specific timeline for dates of completion, and Ap-plebrook Construction LLC completed the terms of the contract through another principal. Taking as true and correct the allegations in the bill of information, no bill of particulars having been filed by the State, the district court erred in granting the motion to quash on the first two grounds asserted by Mr. Brooks.
12nIn its brief, the State limited its arguments to the two grounds discussed above; it made no argument as to the other two grounds — double jeopardy and the State’s alleged failure to file the bill of particulars. As to the double jeopardy ground, Mr. Brooks, in his written motion to quash, most likely asserted that the two counts — theft and misappropriation of funds by a contractor — rested upon the same evidence. The victim and the dates of the offenses were the same. All of the testimony from the victim, Mr. Bruser, pertained to both charges — that he wrote checks that Mr. Brooks cashed and converted to his own use rather than using the money to pay for materials for the job.
While Mr. Brooks might ultimately prevail on a double jeopardy claim, the Louisiana Supreme Court’s recent holding in State v. Hall, 12-0601 (La.6/29/12), 91 So.3d 302, dictates that the appropriate time to raise this claim is after he has actually been convicted on both counts. As the Supreme Court explained in Hall:[8]
A defendant may raise a claim of double jeopardy before trial by way of a motion to quash, La.C.Cr.P. art. 532(6), as well as after trial by way of a motion in arrest of judgment. La.C.Cr.P. art. 859(6)(“if not previously urged”). However, when a double jeopardy claim *1141 arises in the context of multiple offenses allegedly committed in a single criminal episode involving a single evidentiary nexus and charged in the same bill of information or indictment, and the state has thus made no effort to prosecute the charges seriatim, and a question arises as to whether the same evidence required to convict a defendant of one offense is also the same evidence required to convict him of the other crime, the court should defer ruling on a motion to quash until trial has fully developed the factual context of a claim that prosecution has implicated the double jeopardy prohibition of multiple 121 punishments for the same offense. See Ohio v. Johnson, 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) (“While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [a defendant] for such multiple offenses in a single prosecution.”); cf. Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983) (“With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.”). In the event that the evidence at trial supports a claim that defendant has been punished in a single proceeding twice for the same offense, the court may then take appropriate action by granting the motion to quash and vacating the conviction on the less seriously punishable offense. See Ball v. United States, 470 U.S. 856, 861-64, 105 S.Ct. 1668, 1671-73, 84 L.Ed.2d 740 (1985) (“To say that a [defendant] may be prosecuted simultaneously for violation [of separate offenses] ... is not to say that he may be convicted and punished for two offenses.... [T]he only remedy consistent with the [legislative] intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions.... [which alone] is unauthorized punishment for a separate offense ”)(citing Hunter); State v. Dubaz, 468 So.2d 554, 556 (La.1985) (“Where multiple punishment has been erroneously imposed the proper ... procedure is to eliminate the effect of the less severely punishable offense”).
Hall, 12-0601 at pp. 1-2, 91 So.3d at 303. Given the Supreme Court’s holding in Hall, supra, we find that the district court erred in granting the motion to quash on double jeopardy grounds. On remand, the district court is instructed to defer a ruling on the double jeopardy claim until after Mr. Brooks has been convicted on both counts, assuming such convictions occur.
The fourth and final basis for the granting of the motion to quash is Mr. Brooks’ complaint that the State failed to file a bill of particulars as ordered by the district court.[9] Pursuant to La.C.Cr.P. art 532(4), a motion to quash may be based I22OU the district attorney’s “failure to furnish a sufficient bill of particulars when ordered to do so by the court. In such case, the court may. overrule the motion if a sufficient bill of particulars is furnished *1142 within the delay fixed by the court.” La. C.Cr.P. art 532(4). The purpose of the bill of particulars provided for in La.C.Cr.P. art. 484 is to provide a means by which a defendant is informed of the charges against him. State v. Dejesus, 94-0261, p. 3 (La.9/16/94), 642 So.2d 854, 855 (citations omitted). “While the bill of particulars is not a means for the defendant to obtain the State’s evidence, it should inform him of the essential facts of the crime charged.” State v. Barrow, 98-0374, p. 4 (La.App. 4 Cir. 11/25/98), 724 So.2d 263, 265 (citing DeJesus, supra). Thus, if the district court determines that either the bill of information or the bill of particulars, or both, are insufficient, it may quash the charges. Id.
The record in this case does not affirmatively show that a response was ever filed to Mr. Brooks’s supplemental motion for a bill of particulars and discovery. However, the minute entry of January 14, 2009, the date the State’s response was due, fails to show that there was a defense objection to any alleged failure to respond. Instead, the entry states that Mr. Brooks and counsel appeared and that a hearing on motions was set for February 5, 2010, which was the date the preliminary hearing was held. Neither the February 5th minute entry nor the transcript reflects any objection by Mr. Brooks to the State’s alleged failure to respond to the motion for a supplemental bill of particulars and discovery. | ^Considering the lack of evidence of a timely objection to the State’s alleged failure to respond to the request of a bill of particulars coupled with Mr. Brooks’ failure to argue in the district court or in his brief to this court that he is unaware of the nature of the charges against him, we find that the granting of the motion to quash cannot be upheld based on the State’s failure to file a bill of particulars.
Summarizing, none of the four grounds cited by Mr. Brooks in his motion to quash provided a valid basis for the district court to grant his motion to quash. Nevertheless, in this case, as in the Schmolke case, there are apparent defects in the bill of information as to count two — the violation of La. R.S. 14:202 — that we find it appropriate to address, although not raised by Mr. Brooks.[10]
In count two, the State failed to allege a dollar amount of misappropriated funds. Under La. R.S. 14:202(B) and (C), the dollar amount misapplied affects the potential penalty. Pursuant to La.C.Cr.P. art. 470, the value, price, or amount of damage must be alleged when “such allegation is essential to charge or determine the grade of the offense.” La.C.Cr.P. art. 470.
In State v. Ferguson, 10-0199 (La.App. 4 Cir. 6/30/10), 43 So.3d 291, this court held that the failure to include a dollar value in a bill charging a violation of 124La. R.S. 14:202 was harmless because the defendant, who pled guilty, was not prejudiced because he was fully advised of the potential sentence and amount which the State contended he misapplied. The Court distinguished State v. Olivier, 03-1589 (La.App. 3 Cir. 6/16/04), 879 So.2d 286, in which the court reversed a defendant’s conviction and sentence because the bill did not include the value of misappro *1143 priated funds. The court noted that, without a stated value, it could not determine if the defendant was entitled to a jury trial or whether the court had appellate jurisdiction. See also State v. Toussaint, 11-1404 (La.App. 3 Cir. 5/2/12), 94 So.3d 62.
Here Mr. Brooks did not base his motion to quash count two on the omission of an allegation regarding the amount of the misappropriated funds. Furthermore, Mr. Brooks in his brief does not argue the omission as a basis to quash count two. This court declines to quash on our own motion under La.C.Cr.P. art. 485 the bill of information at this state of the proceedings; instead, we instruct that the State be directed on remand to amend count two of the bill of information to comply with La. C.Cr.P. art. 470. See Schmolke, 12-0406, pp. 9-10, 108 So.3d at 302.
Also as discussed in Schmolke, supra, the State failed to allege in the bill of information as to count two that Mr. Brooks knowingly failed to apply the funds he received from Mr. Bruser to the construction project. This court in Schmolke, supra, explained:
The district attorney indicates that he is charging Mr. Schmolke under the provisions of La. R.S. 14:202 A. The bill of information charges that Mr. Schmolke failed to apply the money received from the homeowners to the construction project; it does not allege that he | ^knowingly failed to apply the money. Proof of misapplication of the funds, however, is not enough. See Spears, 05-0964, p. 5, 929 So.2d at 1224. “The State [is] required to prove that the misapplication was made knowingly.” Id. Section 202 A is a specific intent crime. See La. R.S. 14:10(1) (“Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.”). See also State v. Cohn, 00-0313, p. 8 (La.4/3/01), 783 So.2d 1269, 1275 (in emphasizing the “knowing misapplication” element of the statute stated that § 202 A “clearly does not criminalize a bad business deal made by a contractor who otherwise applies all of the funds received under the contract for legitimate expenses and claims for materials and labor in the course of the project”); State v. Weems, 595 So.2d 358, 360 (La.App. 2nd Cir.1992) (in reversing conviction held that “the state did not prove beyond a reasonable doubt defendant knowingly misapplied part of the $40,000 received, but only proved one material-man was not paid.”)
[[Image here]]
In this case, the district attorney, however, has not stated the special mental element of this offense in the bill of information (or in the.bill of particulars) and did not cite the statute in either bill. But, because the deficiency which we note is a ground set out in La.C.Cr.P. art. 532(2), the court may allow amendment to correct the defect. And, as we stated earlier, the matter can be easily addressed on remand if Mr. Schmolke timely files a motion to quash on this ground. See La.C.Cr.P. art. 535 A(2).
Schmolke, 12-0406, pp. 10-11, 108 So.3d at 302-03.
Accordingly, on remand, the district court is instructed to order that the State amend the bill of information to comply with La. C.Cr.P. art. 407 and La. R.S. 14:202. In the event the State fails to do so, Mr. Brooks’s right to file a motion to quash because of the deficiencies is reserved.

DECREE

For the foregoing reasons, the defendant’s motion to dismiss the appeal is denied. The district court’s judgment grant *1144 ing the defendant’s motion to quash is ^reversed. This matter is remanded for further proceedings in accordance with the instructions in this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS

. The docket master and minute entries erroneously indicate that the second count is a violation of La. R.S. 14:202.1, home improvement fraud. This statute, however, did not exist in 2007; it was added by Acts 2008, No. 292, Sec. 1.

. An appeal filed by the State in a criminal case should be dismissed if the State's motion for appeal was untimely filed. State v. Gray, 98-2902 (La.5/7/99), 740 So.2d 1291. In this case, the State's motion for appeal was timely filed and granted; Mr. Brooks does not contend otherwise.

. In State v. Fugler, 09-1822 (La.9/17/10), 45 So.3d 1060, the pleading at issue was a timely filed motion to reconsider sentence. After twelve years, the defendant sought a ruling on the motion; apparently the district court vacated his original sentence and set the matter for a hearing. The Supreme Court reinstated the defendant’s original sentence and vacated the district court’s decision to set the matter for a hearing on the motion to reconsider. In State v. Austin, 11-0122 (La.App. 1 Cir. 6/10/11), 99 So.3d 1008, the defendant had filed a motion to suppress evidence, but he proceeded to trial without moving for a hearing or obtaining a ruling on the motion. The appellate court held that the defendant abandoned his motion by failing to have the district court act before the trial.

. Although there is no trial transcript in this matter, the record contains the transcript of the preliminary hearing at which the victim testified. The victim also testified at the motion to quash hearing. From these transcripts, it is possible to glean the basic facts of the alleged offenses.

. The company is referred to as Applebrook Construction, Apple Brooks Construction, and Applebrooks Construction. Because it appears that the correct name is Applebrook Construction, that name is used in this opinion.

. In State v. Legendre, 362 So.2d 570 (La.1978), die State alleged in the bill of particulars that the dangerous weapon used was a concrete parking lot. The Court held that "[t]he question, then, is whether the indictment charges a valid offense. If it does not, it is a defective indictment and its invalidity may be declared by a ruling on a motion to quash, for a motion to quash may be based on the ground that the indictment fails to charge an offense which is punishable under a valid statute.” Id. at 571. The court in Legendre went on to note that "[i]t will not do to base an indictment for a serious offense ... upon an allegation of fact which cannot conceivably satisfy an essential element of the crime.” Id.

. See also State v. Severin, 12-0205, pp. 3-4 (La.App. 4 Cir. 10/17/12) (unpub.), 2012 WL 6619009, in which this court held that the district court erred when it quashed the bill of information charging the defendant with theft arising from his failure to install a roof properly on the grounds that the matter was civil in nature. This court found that to be error, stating that "the jurisdiction of the district attorney to prosecute those who violate state criminal statutes is exclusive. It can only be constrained or curtailed when it operates to the prejudice of a contrary constitutional mandate, and even then, only with due deference to the district attorney’s constitutional prerogative.” Id. (citing Board of Com'rs of Orleans Levee Dist. v. Connick, 94-3161, p. 8 (La.3/9/95), 654 So.2d 1073, 1077 (citing City of Baton Rouge v. Short, 345 So.2d 37, 40 (La.1977))).

. In State v. Hall, 12-0601 (La.6/29/12), 91 So.3d 302, the Louisiana Supreme Court reversed the district court granting of the defendant’s motion to quash a bill charging her with one count each of possession of a firearm while in possession of cocaine and possession of cocaine with the intent to distribute. Previously in that case, this court determined that there was no evidence to support the double jeopardy claim and vacated the district court’s ruling; however, this court then remanded the matter for an evidentiary hearing. State v. Hall, 11-0931 (La.App. 4 Cir. 2/15/12), 85 So.3d 221.

. The record reflects that it was actually a Motion for a Supplemental Bill of Particulars and Discovery which was filed by Mr. Brooks on December 18, 2009. The district court signed the attached order setting a return date of January 14, 2009 for the State’s response. The record does not contain an original Motion for Bill of Particulars; it does contain a pleading titled "Omnibus Motion for Discovery; Motion to Preserve Evidence; Motion for Suppression of Statements, Evidence and Identifications; and Motion for a Preliminary Examination.” This motion was filed on September 29, 2009.

. This court in Schmolke, supra explained:
In this matter we, however, have observed a deficiency in the bill of information which was not precisely urged to the trial judge and which has not been argued or briefed before us. Because the identified deficiency can be easily cured on remand by the district attorney’s amendment of the bill of information and the parties have not had an opportunity to yet address the deficiency, we decline to quash on our own motion under Article 485 the bill of information at this stage of the proceedings.
Schmolke, 12-0406 at pp. 9-10, 108 So.3d at 302.